**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **EXPEDI, INC. d/b/a GOEXPEDI** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. _____** |
| **REBOUND INTERNATIONAL, LLC** | § | |
| **AND GLOBAL OILER LLC,** | § | |
| | § | |
| *Defendants*. | § | |

---

**GOEXPEDI'S ORIGINAL COMPLAINT AND**
**APPLICATIONS FOR INJUNCTIVE RELIEF**

---

Plaintiff Expedi, Inc. d/b/a GoExpedi ("GoExpedi") files this Original Complaint and Application for Injunctive Relief against Defendants Rebound International, LLC and Global Oiler LLC ("Global Oiler") (collectively, "Defendants" or "Rebound"), and respectively shows as follows:

## I.  INTRODUCTION

1.     This is an action to enforce GoExpedi's federally registered service marks—the term "GoExpedi" and a flame logo (collectively, the "GoExpedi Marks").  In an effort to ride the coattails of a far more successful rival, Rebound is willfully infringing on these marks.  Worse, Rebound is attempting to steal ownership of the GoExpedi Marks outright, registering its infringing marks with the U.S. Patent and Trademark Office (USPTO) and bringing a trademark infringement action against GoExpedi in Texas state court.

2.     But those registrations and lawsuit are built on a common lie.  Simply put: Rebound doesn't own the GoExpedi Marks.  GoExpedi designed, began using in commerce, and registered

the GoExpedi Marks with the USPTO long before Defendants began using their infringing versions.

3.      And karma is a boomerang.  Indeed, in its USPTO filings and lawsuit, Rebound has unwittingly dug its own grave.  In its USPTO filings, Rebound admits that it did not begin using its infringing marks in commerce until July 2019—years *after* GoExpedi began using the GoExpedia Marks in February 2017.  And in its lawsuit, Rebound admits the marks it is using are so substantially "the same or similar" to the GoExpedi Marks that they have caused "actual confusion in the marketplace."  In short, in its USPTO filings and lawsuit, Rebound has admitted to each of the essential elements of a trademark infringement claim.  The only question remaining for this Court, then, is what do about Rebound's admitted infringement.

4.      On that question, the answer is simple: award GoExpedi damages for Defendants' past infringement and enjoin Defendants from further infringement.  To obtain this relief, GoExpedi brings this suit.

## II.      PARTIES

5.      GoExpedi is a Delaware corporation with its principal place of business in Houston, Texas.

6.      Rebound is a Texas limited liability company with its principal place of business located at 150 West Sam Houston Parkway North, Suite 2000, Houston, Texas 77024.  Rebound is the applicant and registrant of the infringing marks.

7.      Global Oiler is a Texas limited liability company with is principal place of business located at 150 West Sam Houston Parkway North, Suite 2000, Houston, Texas 77024.  According to Rebound, its operations are performed through its operating company, Global Oiler.  Global Oiler uses the infringing marks in commerce.

### III.   FACTS

**A.   GoExpedi is an Innovative Procurement Services Company Disrupting the Industrial Supply Industry.**

8.     GoExpedi provides maintenance, repair, and operations ("MRO") procurement services to the oilfield industry.  But what sets it apart from all its competitors is *how* it goes about providing these services.

9.     GoExpedi is the brainchild of Tim Neal ("T. Neal").  His inspiration was the realization that MRO consumers are like consumers of any other products: they want access to an online marketplace where they can compare prices and specifications for multiple products from different vendors.  And they want a customized and efficient shopping experience responsive to their individualized needs.  So T. Neal dreamed of creating an e-commerce platform that could provide that experience—an Amazon.com for oil and gas production equipment and supplies.

10.     With the help of his father, Larry Neal ("L. Neal"), T. Neal turned his dream into a reality, together founding GoExpedi in 2017.  T. Neal quickly discovered that his instincts were right.  In the ensuing years, that tiny start-up, operating initially out of the back of a pickup truck, has grown into a market disrupter and leader in the energy procurement services industry.

11.     GoExpedi has been called "Amazon meets Uber" in the energy equipment domain, with a fully online e-commerce marketplace that provides a rapid-delivery means of supplying critical parts to customers.[1]  Through its robust e-commerce platform, GoExpedi provides more than 200,000 critical parts and supplies across hundreds of manufacturers with complete transparency to customers on price, supplier choice, and availability.  And because of its innovative supply chain platform, GoExpedi significantly improves efficiency and reduces costs for its customers, typically at 25% less cost than its competitors.  Through its substantial investments in

---

[1]     *See GoExpedi*, Hart Energy, https://www.hartenergy.com/companies/goexpedi (last updated May 4, 2020).

its technology and data analytics, GoExpedi also uses artificial intelligence to offer advanced product suggestions, among other things.

12.     GoExpedi's unique technology-disrupting business model has been wildly successful.  And its meteoric rise has garnered industry praise and recognition.  In 2020, for example, Frost & Sullivan awarded GoExpedi the 2020 North American Upstream Oil and Gas Supply Chain Competitive Strategy Innovation and Leadership Award, finding, among other things, "that no other competitor offers a comparable platform that addresses customers' major needs and constraints to the extent that GoExpedi achieves" and that "GoExpedi has carved a niche for itself by providing outstanding service . . . ."[2]

13.     GoExpedi also has received recognition as an industry-disrupting market leader from *The Wall Street Journal* and *Houston Business Journal*, and *World Oil*, among other publications.[3]

**B.     GoExpedi Uses and Registers Its Distinctive Marks.**

14.     In early 2017, GoExpedi held a contest for design companies and artists to design its logo.  The winning logo was the following:

---

[2]   2020 *Best Practices Awards*, Frost & Sullivan, https://ww2cdn.frost.com/wp-content/uploads/2020/06/GoExpedi-Award-Write-Up.pdf (last accessed Nov. 6, 2020).

[3]   *See* https://www.wsj.com/articles/top-tier-capital-partners-doubles-down-on-goexpedi-11600209802; https://www.bizjournals.com/houston/news/2020/09/17/goexpedi-series-c-capital-raise-e-commerce.html;   and https://www.worldoil.com/news/2019/9/12/ensign-taps-goexpedi-to-innovate-drilling-supply-chain.



15.     The artist who designed the winning logo transferred rights in the logo to GoExpedi.

16.     Almost immediately thereafter, GoExpedi began using this stylized flame logo in commerce.  On or about February 13, 2017, GoExpedi launched its website, which featured and prominently displayed the stylized flame logo.  At that same time, GoExpedi also began using the name "GoExpedi" in commerce.  For example, it used the name "GoExpedi" in its website URL (www.goexpedi.com) from the outset.[4]  In March 2017, T. Neal created a GoExpedi marketing flyer that he and other employees distributed to prospective customers. The flyer featured the same stylized flame mark and displayed the "GoExpedi" name.  A few months later, on or about June

---

[4]     The primary reason for using GoExpedi instead of Expedi in the website URL was because the website www.expedi.com is evidently owned by Expedia Group Inc. and redirects to that company's travel website, www.expedia.com.

11, 2017, GoExpedi launched its e-commerce platform, which also prominently featured the stylized flame logo.  Approximately nine days later, a customer placed the first order using the e-commerce platform.

17.     After approximately a year and a half of operating, GoExpedi decided to officially rebrand from "Expedi" to "GoExpedi."  GoExpedi made the decision to do so to further strengthen its brand in the marketplace by allowing business partners, customers, suppliers, and others to more easily find and to distinguish GoExpedi in the marketplace.[5]  Thus, on or about February 13, 2019, GoExpedi submitted the necessary paperwork to start doing business as "GoExpedi" instead of "Expedi."

18.     Then, on March 14, 2019, GoExpedi filed an application to register its name, "GOEXPEDI," and its logo, a flame, as marks with the USPTO.  The logo did not include a particular color, and it appeared as follows:



19.     On December 24, 2019, GoExpedi became the owner of the federally registered GoExpedi Marks—"GOEXPEDI" (Reg. No. 5942089) and the above-identified stylized flame (Reg. No. 5942099)—in connection with "[p]roviding a website used to place on-line commercial orders in the field of industrial supplies for the oil and gas drilling industry."[6]

---

[5]     For example, the top hit results on Google for "Expedi" all relate to Expedia Group Inc.. Rebranding to "GoExpedi" allowed GoExpedi to sufficiently distance itself from Expedia Group Inc. and create a space of its own.

[6]     Exs. A and B (GoExpedi's Certificate of Registrations).

20.     GoExpedi uses its marks on material distributed to potential and current business partners, investors, suppliers, and customers, among others.  This use includes, but is not limited to, GoExpedi's website, where buyers and suppliers can log in to the e-commerce platform or contact the company;[7] its mobile e-commerce platform; marketing materials; and social media, where GoExpedi advertises to potential customers and other interested members of the community.[8]  GoExpedi's website is shown below:



## C.     Rebound Misappropriates the GoExpedi Marks.

21.     Rebound provides MRO procurement services to the same or similar oilfield customers as GoExpedi.  But that is where the similarities end.  Their respective business plans are light years apart.  Most glaringly, whereas GoExpedi provides customers a vast marketplace

---

[7]   *GoExpedi*, https://www.goexpedi.com/ (last accessed Nov. 9, 2020).
[8]   *E.g.*, *GoExpedi*, Facebook, https://www.facebook.com/goexpedi/ (last accessed Nov. 9, 2020); *GoExpedi*, LinkedIn, https://www.linkedin.com/company/goexpedi/ (last accessed Nov. 6, 2020).

through its innovate e-commerce platform (as described above), Rebound sells products primarily from one vendor (TSC) in a shipping-like "box" container that Rebound places at various sites and then must replenish as supplies are depleted.  Rebound has not achieved anything close to the success of GoExpedi.

22.     GoExpedi's success engendered Rebound's resentment for all the ordinary reasons a struggling competitor resents a successful one.  But Rebound's resentment was also personal. Before founding GoExpedi, T. Neal was an employee at Bullseye Energy, LLC ("Bullseye") (Rebound is Bullseye's purported successor-in-interest).  T. Neal saw the many flaws in Bullseye's single-vendor "box" business model and tried—but failed—to convince Bullseye to change.  So when T. Neal left Bullseye, founded GoExpedi, and successfully implemented his innovative business plan there, it ***stung***.

23.     This was the apparent motivation for what Rebound did next.  Recognizing it could not compete with GoExpedi's innovative approach on the merits, it evidently believed it would benefit by stealing GoExpedi's marks and sowing confusion in the marketplace.  Accordingly, in the summer of 2019—more than two years after GoExpedi began using the GoExpedi Marks in commerce—Rebound redesigned its marks to be confusingly similar to the GoExpedi Marks.

24.     Prior to this summer 2019 re-design, Rebound had used an oil drop for its Global Oiler[9] mobile application.  It appeared as follows:

---

[9]     According to Rebound, its operations are performed through its operating company, Global Oiler, LLC.  Ex. C, Pls' First. Am. Pet. ¶ 23, State Court Action.  Global Oiler, LLC arose from the original Global Oiler Mobile Application.  *See id.*; *id.* ¶ 12.

**<u>Old Rebound Logo</u>**                    **<u>Old Rebound Mobile Application</u>**

       

25.     Only ***after*** GoExpedi began using the GoExpedi Marks did Rebound revise its oil drop logo to mimic the GoExpedi's Marks by featuring similarly stylized flames that it uses (i) on its own[10] (the "Rebound Flame Mark"), (ii) inside of the "O" in the word "GO" (Reg. No. 6037158) (the "GO Flame Mark"), and (iii) inside of the third "O" of "Global Oiler" (Serial No. 88807733) (the "Global Oiler Flame Mark") (collectively, the "Infringing Marks").[11]

26.     As Rebound had intended, its newly-designed Infringing Marks strongly resemble the GoExpedi Marks:

**<u>Infringing Marks</u>**

                    

---

[10]     Ex. L (Rebound Flame Mark).
[11]     Exs. D, E, and F (Rebound's USPTO registrations)

**GoExpedi Marks**



27.     Rebound's Infringing Marks are confusingly similar to the GoExpedi Marks, when taken together.  Indeed, the dominant feature in each of the Infringing Marks (and the sole feature in the Rebound Flame Mark) is the stylized flame that is strikingly similar to GoExpedi's stylized flame mark.  And the GO Flame Mark features not only the stylized flame mark, but also the word "Go." Given circumstances of Defendants' and GoExpedi's use of the marks, including their use of the marks in the same advertising channels, to target the same customer base, for their provision of similar MRO procurement services, prospective customers or suppliers are likely to believe that Defendants and GoExpedi are somehow associated, when in fact they are not.

28.     And the resemblance is no coincidence.  Tellingly, in its filings with the USPTO, Rebound admits that it did not begin using the GO Flame Mark and the Global Oiler Flame Mark in commerce until July 1, 2019—***more than two years after GoExpedi's first use of the GoExpedi Marks***.   And—consistent with this same, incriminating timeline—Rebound did not submit the GO Flame Mark and the Global Oiler Flame Mark for registration with the USPTO until September 2019 and February 2020.[12]  Rebound does not appear to have submitted USPTO filings for the Rebound Flame Mark as of the date of this filing and appears to have only just started using it within the past few days.

---

[12]     Exs. D, E, and F (Rebound's USPTO registrations).

**D.      Rebound Sues GoExpedi, T. Neal, and L. Neal, Claiming the GoExpedi Marks as Its Own.**

29.      Then, on January 13, 2020, in an effort to complete its attempted theft of the GoExpedi Marks, Rebound filed a common law trademark infringement claim against GoExpedi, claiming (falsely) that Rebound was the rightful owner of the mark it had actually copied from GoExpedi (the "State Court Action").[13]

30.      How Rebound believed it would get away with this false claim is unclear.  Perhaps it believed that GoExpedi had not yet registered the marks Rebound had copied.  Or perhaps it believed it could successfully conceal the incriminating timeline set forth above from GoExpedi and the state court.

31.      Whatever its thinking, filing this lawsuit was a high-stakes gamble.  Why?  Because in the State Court Action, Rebound admitted each and every one of the elements of a trademark infringement action.  It acknowledged that the similarity of the marks caused "actual confusion of customers who thought GoExpedi and Global Oiler must be affiliated."[14]  Rebound also admitted, "The marks 'GO', affiliated with a platform to acquire MRO materials and services, and 'GoExpedi', affiliated with the same kind of business, are likely to confuse customers, and have actually confused customers."[15]

32.      Rebound then doubled down on these admissions in its verified interrogatory answers in the State Court Action, "***declar[ing] under penalty of perjury***" that Rebound's and GoExpedi's marks are "confusingly similar" for "at least" the following reasons:

- "[T]he words [GoExpedi and GO] are similar;"

---

[13]      The state court dismissed the claims against T. Neal, referring them to arbitration instead, because of Rebound's flagrant disregard of its arbitration agreement with T. Neal.

[14]      Ex. C, Pls' First. Am. Pet., State Court Action, ¶ 23.

[15]      Ex. C, Pls' First. Am. Pet., State Court Action, ¶ 38.

- "[Rebound's] and [GoExpedi's] services are the same or similar;"

- "[T]here is an identity of [Rebound's] and [GoExpedi's] potential and actual customers and investors;"

- "[T]he visual marks [pictured above] are additionally similar because both include a similar fanciful graphic element," a flame; and

- "[Rebound] has seen actual confusion in the marketplace[.]"[16]

33.      Regarding the last point, Rebound further swore under penalty of perjury that it is "currently aware of at least one potential customer [Rebound] approached who expressed confusion and thought [Rebound] and [GoExpedi] were affiliated due to the similarity of the marks."[17]

**E.      As it has Admitted in the State Court Action, Rebound's Copied Marks Confuse Customers and Violate GoExpedi's Trademark Rights.**

34.      Rebound's risky gambit that it could successfully conceal its copying of the GoExpedi Marks was, in retrospect, a foolhardy one.  Indeed, Rebound is damned by its own USPTO filings—admitting that it did not use its mark in commerce until years after GoExpedi first did.  But Rebound is surely right about one thing: its copied Infringing Marks are so similar as to be highly confusing to customers.

35.      Magnifying the confusion, and the resulting harm to GoExpedi, Rebound uses the Infringing Marks in the same advertising channels as GoExpedi, including the boxes it delivers to customers and its website, Facebook page, and LinkedIn page.[18]  The Global Oiler website homepage, for example, shows two of the Infringing Marks.

---

[16]   Ex. G (Pls.' Objs. & Answers to Def. Expedi's First Set of Interrogs.) at Interrog. No. 6; *see* Pls.' First Amended Pet., ¶¶ 20, 60.

[17]   Ex. G (Pls.' Objs. & Answers to Def. Expedi's First Set of Interrogs.) at Interrog. No. 7.

[18]   Exs. H, I, and J (Defendants' website and social media pages); *see also* Global Oiler Website, http://www.globaloiler.com/ (last accessed Nov. 9, 2020); Global Oiler Facebook Page, https://www.facebook.com/GlobalOiler/ (last accessed Nov. 9, 2020); *Global Oiler*, LinkedIn, https://linkedin.com/company/globaloilerllc (last accessed Nov. 9, 2020).

**Global Oiler Website**:



36.     Rebound also uses the Infringing Marks in its mobile application, where it sells products.[19]

37.     By using logos that are confusingly similar to GoExpedi's valid, protectable GoExpedi Marks, Rebound has infringed on GoExpedi's trademark rights.

38.     This infringement has caused GoExpedi irreparable harm, including loss of control, loss of goodwill, and loss of reputation.[20]

---

[19]    Ex.   K   (Global   Oiler   Mobile   Application);   *see   also   Global   Oiler   Lite*,   Apple   Store, https://apps.apple.com/us/app/global-oiler-lite/id1465050870 (last accessed Nov. 9, 2020).

[20]    *E.g.*, *Bd. of Regents of the Univ. of Houston Sys. on Behalf of the Univ. of Houston Sys. & Its Member Institutions v. Houston Coll. of Law, Inc.*, 214 F. Supp. 3d 573, 603 (S.D. Tex. 2016) (finding irreparable harm exists through lack of control and unfair exploitation of brand); *Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 496 (E.D. Tex. 2020) (holding trademark infringement caused

39.     Even worse, the infringement has irreparably harmed GoExpedi's reputation by causing potential customers and energy sector professionals to erroneously associate GoExpedi with Rebound's inferior products and services.[21]

40.     Rebound seeks to magnify this harm even further by suing GoExpedi for trademark infringement—even though ***it knows*** the opposite is true.[22]   Rebound's abuse of the judicial process for this nefarious end is worthy of this Court's highest condemnation.

41.     GoExpedi has suffered irreparable harm to its reputation and business from Rebound's infringement of its registered marks.  Rebound displays its confusingly similar logo on the mobile application, websites, and social media, all to solicit business and confuse customers with GoExpedi's successful brand.

42.     To be made whole from the substantial harm that Rebound's wrongdoing has caused it, GoExpedi bring this suit.

## IV.     CONDITIONS PRECEDENT

43.     All conditions precedent to GoExpedi's claims for relief have been performed, have occurred, and/or are excused or waived.

## V.     CAUSES OF ACTION

### A.     Count One:  Trademark Infringement under Lanham Act.

44.     GoExpedi incorporates herein by reference the allegations set forth in the preceding paragraphs.

---

irreparable harm because customers were confused, causing plaintiff to lose control of reputation and lose goodwill and business); *see also Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 757 (9th Cir. 2018) (holding trademark infringement caused irreparable injury to brand reputation and goodwill by confusing customers); *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 596 (6th Cir. 2015) ("For the purpose of an injunction, irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark because loss of control over one's reputation is neither calculable nor precisely compensable.") (cleaned up);

[21]   *See Adidas Am., Inc.*, 890 F.3d at 757; *CFE Racing Prod., Inc.*, 793 F.3d at 596.

[22]   *See B & B Hardware, Inc.*, 575 U.S. 142.

45.     GoExpedi has valid, protectable U.S. trademark rights in the name "GOEXPEDI" and its logo.

46.     Rebound adopted the Infringing Marks, which are confusingly similar to the GoExpedi Marks.  Rebound's using those marks is likely to cause consumers to confuse the Infringing Marks with the GoExpedi Marks.

47.     GoExpedi used the GoExpedi Marks in commerce before Rebound used the Infringing Marks in commerce.

48.     Consequently, GoExpedi has a cause of action for trademark infringement against Rebound under the Lanham Act, 15 U.S.C. § 1114.

49.     Rebound's infringement of GoExpedi's trademark rights has harmed GoExpedi, causing GoExpedi to suffer, among other things, imminent, irreparable injury.

**B.     Count Two: Unfair Competition under Lanham Act.**

50.     GoExpedi incorporates herein by reference the allegations set forth in the preceding paragraphs.

51.     GoExpedi has valid, protectable U.S. trademark rights in the GoExpedi Marks, preceding its registration with the USPTO.  GoExpedi used the GoExpedi Marks in U.S. commerce before Rebound did, and they are distinctive.

52.     Rebound adopted the Infringing Marks that are the same, or confusingly similar to the GoExpedi Marks, such that consumers are likely to confuse them.

53.     Rebound's infringement of GoExpedi's trademark rights has harmed GoExpedi causing GoExpedi to suffer, among other things, imminent, irreparable injury.

**C.     Count Three: Unfair Competition under Texas law.**

54.     GoExpedi incorporates herein by reference the allegations set forth in the preceding paragraphs.

55.     Rebound has used, and continues to use,  the GoExpedi Marks in competition with GoExpedi, thereby gaining a special advantage in the market and profiting off of GoExpedi's marks and business.

56.     The  GoExpedi  Marks  have  acquired  a  secondary  meaning  through  usage, identifying the products with GoExpedi in the mind of the public.  The similarity to the marks used by Rebound are likely to confuse the public.

57.     Rebound has committed trademark infringement against GoExpedi.

58.     GoExpedi has suffered, and continues to suffer, commercial damage, including, but not limited to, lost revenue, business opportunity, and good will.

**D.      Count Four: Trademark Cancellation under Lanham Act.**

59.     GoExpedi incorporates herein by reference the allegations set forth in the preceding paragraphs.

60.     GoExpedi  seeks  cancellation  of  Defendants'  registered  trademarks  that  are confusingly similar to the GoExpedi Marks, pursuant to 15 U.S.C. § 1119.  That section provides that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, . . . and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

61.     GoExpedi  has  standing  to  pursue  trademark  cancellation  because,  as  set  forth above, the GoExpedi Marks are valid and protectable marks and GoExpedi is, and is likely to continue to be, damaged by Defendants' use of their confusingly similar Infringing Marks.

62.     Valid grounds exist for discontinuing Defendants' confusingly similar marks. As set forth above, GoExpedi is the senior user of the GoExpedi Marks and, after GoExpedi began using its GoExpedi Marks in commerce, Defendants redesigned their marks to be confusingly similar the GoExpedi Marks to sow confusion in the marketplace and reap the benefits of

exploiting GoExpedi's excellent reputation and goodwill in the marketplace. The Infringing Marks are confusingly similar to the GoExpedi Marks and convey a false sense of connection or association between GoExpedi and Defendants. The Infringing Marks should not have been registered in the first place.

63.      Accordingly, GoExpedi request that the Court cancel the registration for any of the Infringing Marks that have been federally registered.

## VI.      DAMAGES, ATTORNEYS' FEES, AND RELIEF

64.      GoExpedi incorporates herein by reference the allegations set forth in the preceding paragraphs.

65.      GoExpedi seeks all damages recoverable under Texas and federal law, including direct and consequential damages.

66.      For Rebound's infringement of GoExpedi's trademarks, GoExpedi seeks to recover, as provided by the Lanham Act, 15 U.S.C. § 1117(a): Counter-Defendants' profits; actual business damages GoExpedi suffered; out-of-pocket losses such as corrective advertising; lost profits; punitive damages; and the costs of the action.[23]

67.      GoExpedi has been forced to retain the undersigned in connection with this matter. GoExpedi has agreed to pay the undersigned attorneys a reasonable fee for their services. GoExpedi asks that this Court award GoExpedi its reasonable attorneys' fees and other costs. GoExpedi's trademark infringement claim, as discussed in the preceding paragraphs, stands out from other such claims because of both its substantive strength and the unreasonable manner in which Rebound litigated the State Court Action. Rebound filed a meritless trademark infringement

---

[23] "'Actual damages' in this context covers everything from damages from lost sales or licensing fees due to the infringer's sale of offending goods to intangible harm like reputational damage and loss of good will." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019) (awarding relief under the Lanham Act).

claim against GoExpedi, concealing the fact that it had infringed GoExpedi's registered marks instead of the other way around.  Therefore, this is an exceptional case.[24]  GoExpedi asks the Court to award its reasonable attorney's fees as provided for under the Lanham Act, 15 U.S.C. § 1117(a).

68.     GoExpedi also seeks pre- and post-judgment interest for all claims, at the highest lawful rate, to the extent applicable.

## VII.     APPLICATION FOR PRELIMINARY INJUNCTION

69.     GoExpedi incorporates herein by reference the allegations set forth in the preceding paragraphs.

70.     Along with its Complaint, GoExpedi is filing a Motion for Preliminary Injunction, which Motion GoExpedi fully incorporates herein.

71.     GoExpedi requests that the Court issue a preliminary injunction against Rebound prohibiting it from using or continuing to use, by itself or through its corporate affiliates, the Infringing Marks and any other marks that are confusingly similar to the GoExpedi Marks.

72.     A party seeking a preliminary injunction must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable harm absent an injunction; (3) that the threatened injury outweighs any damage the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.[25]  GoExpedi meets each of these requirements.

73.     As set forth above, and in the Motion, GoExpedi has a substantial likelihood of success on the merits of the infringement claim.  GoExpedi shows it has valid, protectable marks that Rebound has infringed upon by adopting the Infringing Marks, which are confusingly similar

---

[24]   *All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 295 (5th Cir. 2019) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).
[25]   *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

to the GoExpedi Marks.  Rebound's use of the Infringing Marks is likely to cause consumers to confuse the Infringing Marks with the GoExpedi Marks and cause customers to mistakenly believe that the marks originate from a common source or that some association exists between Defendants and GoExpedi.

74.     **Rebound agrees**.  Rebound admitted both in its pleadings and under the penalty of perjury in its sworn discovery responses in the State Court Action that the Infringing Marks and GoExpedi Marks are confusingly similar and are not only likely to cause consumers to confuse the marks, but have actually already caused such confusion.

75.     Accordingly, GoExpedi is suffering—and will continue to suffer—imminent, irreparable injury if Rebound is not restrained from using the Infringing Marks that are confusingly similar to the GoExpedi Marks.[26]  Rebound's infringement of the GoExpedi Marks has caused GoExpedi to suffer loss of control, loss of reputation, and loss of goodwill.

76.     In the trademark infringement context, "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."[27]  Moreover, "[w]hen a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services."[28]

---

[26]   *See Adidas Am., Inc.*, 890 F.3d at 757 (holding trademark infringement caused irreparable injury to brand reputation and goodwill by confusing customers); *CFE Racing Prod., Inc.*, 793 F.3d at 596 ("For the purpose of an injunction, irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark because loss of control over one's reputation is neither calculable nor precisely compensable.") (cleaned up).

[27]   *Fletcher's Original State Fair Corny Dogs, LLC*, 434 F. Supp. 3d at 496 (finding irreparable harm for trademark infringement because "Fletcher's has shown that it has experienced a loss of control of reputation, a loss of goodwill, and a loss of trade."); *see also Bd. of Regents of the Univ. of Houston Sys.*, 214 F. Supp. 3d at 603 (collecting cases).

[28]   *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 542 (S.D. Tex. 2013) (holding trademark infringement caused irreparable injury because of "likelihood of confusion" between marks).

77.     GoExpedi's actual and threatened injury outweighs any threatened harm to Rebound, and a preliminary injunction against it will not disserve the public interest.

78.     Accordingly, GoExpedi has demonstrated its entitlement to a preliminary injunction.  Without the Court's intervention, GoExpedi will suffer imminent, irreparable harm for which there is no adequate remedy at law.  The full extent of GoExpedi's damages, which include loss of control, loss of reputation, loss of goodwill, and exploitation of its brand, and which GoExpedi will continue to incur if Rebound's conduct continues unabated, is difficult—if not impossible—to assess fully.  It is vitally important that this wrongful conduct be stopped, and Rebound be prohibited from further wrongdoing.

79.     For all these reasons, GoExpedi respectfully requests preliminary and permanent injunctive relief enjoining Rebound, and anyone acting in concert with it, from using the Infringing Marks, or any other mark that is confusingly similar to the GoExpedi Marks.  This prohibited use includes, but is not limited to, on Defendants' websites (such as the Global Oiler website), marketing material, product and supply containers, social media accounts, and mobile applications.

## VIII.   REQUEST FOR PERMANENT INJUNCTION

80.     GoExpedi respectfully asks the Court to set its request for a permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against Rebound and anyone acting in concert with it.

## IX.   CONCLUSION AND PRAYER

81.     For these reasons, GoExpedi respectfully requests that Rebound be commanded to appear and answer, and that GoExpedi recover the following:

> a.   A preliminary injunction restraining and enjoining Rebound and its agents, servants, employees, attorneys and all other persons or entities in active concern or participation with them who receive actual notice of the order by personal service or otherwise, as described above;

b.  A permanent injunction restraining and enjoining Rebound and its agents, servants, employees, attorneys and all other persons or entities in active concern or participation with them who receive actual notice of the order by personal service or otherwise, as described above;

c.  All actual damages (direct and consequential) suffered by GoExpedi, an amount which is in excess of the minimum jurisdictional limit of the Court;

d.  Attorneys' fees and expenses incurred in prosecuting this action;

e.  Costs of suit, pre-judgment and post-judgment interest in the maximum amounts allowed by law; and

f.  Any and all other relief to which GoExpedi may show itself entitled in law or equity.

Dated:  November 16, 2020                    Respectfully submitted,

*/s/ Anna G. Rotman*
Anna G. Rotman
Texas Bar No. 240467661
SDTX License No. 6277249
609 Main Street, Suite 4500
Houston, Texas 77002
Tel:  (713) 836-3600
Facsimile: (713) 836-3601
Email:  anna.rotman@kirkland.com

-and-

Jeremy A. Fielding, P.C. *(SDTX bar application forthcoming)*
State Bar No. 24040895
Michael Kalis *(SDTX bar admission pending)*
State Bar No. 24092606
KIRKLAND & ELLIS, LLP
1601 Elm Street, Suite 2700
Dallas, Texas 75201
Tel:  (214) 972-1754
Fax:  (214) 972-1771
Email: jeremy.fielding@kirkland.com
         michael.kalis@kirkland.com

**ATTORNEYS FOR PLAINTIFF**