# EXHIBIT C

2/11/2020 10:29 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 40729861
By: SHANNON NORTH-GONZALEZ
Filed: 2/11/2020 10:29 AM

No. 2020-02006

| | | |
|---|---|---|
| REBOUND INTERNATIONAL, LLC; BULLSEYE ENERGY, LLC, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| EXPEDI, INC.; TIMOTHY JOHN NEAL; LAWRENCE P. NEAL | § § § | |
| Defendants. | § | 133RD JUDICIAL DISTRICT |

**PLAINTIFF'S FIRST AMENDED PETITION**

Rebound International, LLC ("Rebound") and Bullseye Energy, LLC ("Bullseye"), through their counsel, file this Amended Petition against Defendants Expedi, Inc. ("Expedi"), Timothy John Neal and Lawrence P. Neal, and respectfully alleges as follows:

**NATURE OF THE ACTION**

1. This is an action based on Defendants' unscrupulous acts to create a competing business. Timothy Neal, former General Manager of Bullseye Energy, LLC ("Bullseye"), Plaintiff's predecessor-in-interest, used his position of trust at Bullseye to steal its confidential and trade secret information. Timothy and his father, Lawrence Neal, then formed a competing company, Expedi, using this information. Defendants have used and continue to use the information that Timothy stole from Bullseye. Rebound is the current owner of Bullseye's intellectual property rights, and brings this action for damages incurred from the misappropriation, unfair competition, Timothy's breach of fiduciary duty and breach of his Non-Disclosure and Confidentiality Agreement ("NDA"), Lawrence's knowing participation in this breach of fiduciary duty, Lawrence's and Timothy's conspiracy to use Bullseye's trade secrets and confidential information, and for an injunction to stop Defendants' continued use of its trade secrets and

confidential information as well as Defendants' continued infringement of Rebound's trademark "GO." Bullseye also brings these claims for any rights that did not transfer to Rebound.

## DISCOVERY LEVEL

2.      Discovery should be done under a Level 2 plan, pursuant to TEX. R. CIV. P. 190.3.

## PARTIES

3.      Plaintiff Rebound International, LLC is a Texas limited liability company with its principal place of business located at 150 West Sam Houston Parkway North, Suite 2000, Houston, Texas 77024.

4.      Plaintiff Bullseye Energy, LLC is a Delaware limited liability company with its principal place of business located at 13788 West Road, Suite 100, Houston, Texas, 77041.

5.      Upon information and belief, Defendant Expedi, Inc. is incorporated in Delaware, and has its principal place of business in Texas at 6001 Stonington Street, Suite 196, Houston, Texas 77040. It may be served through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

6.      Upon information and belief, Defendant Timothy John Neal is a resident of the State of Texas who resides at 14003 Winding Springs Dr., Cypress Texas 77429.

7.      Upon information and belief, Defendant Lawrence P. Neal is a resident of the State of Texas who resides at 214 Sage Road, Houston, Texas 77056.

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction in this case. The amount in controversy is within the jurisdictional limits of the Court. Pursuant to TEX. R. CIV. P. 47, Plaintiff seeks monetary relief of over $1,000,000 and injunctive relief.

9. This Court has personal jurisdiction over Expedi because it has its principal place of business in Texas. This Court has personal jurisdiction over Timothy and Lawrence because they reside in Texas. Furthermore, this Court has personal jurisdiction over Timothy and Expedi because they committed misappropriation of trade secrets in this State, and has jurisdiction over all Defendants because they purposely availed themselves of the benefits of Texas law. Timothy consented to jurisdiction of the courts of this State in his NDA with Bullseye.

10. Venue is proper in this County, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002, because Defendant Expedi has its principal place of business in this County. Venue is also proper in this County because upon information and belief Defendant Timothy was a resident of this County at the time the cause of action accrued. Venue is also proper in this County because a substantial part of the events giving rise to Plaintiff's claim occurred in this County.

## FACTS GIVING RISE TO THIS CAUSE OF ACTION

11. Morgan Zhang has worked in the oil and gas industry for thirty-five years. Zhang founded TSC Manufacturing and Supply ("TSC Manufacturing") and TSC Offshore Group ("TSC Offshore"). These companies focus on manufacturing and selling MRO (Maintenance, Repair, and Operations) materials. During his time managing these companies, Zhang had the idea to improve the ways in which consumers could quickly acquire MRO materials and services, and Zhang personally directed a study of the idea within TSC. This service would aid TSC in attaining customers. Zhang eventually presented this idea to TSC's Board, which declined to pursue the project.

12. Zhang formed Bullseye to pursue his new, innovative project to develop new methods for oil rigs to quickly acquire MRO materials and services. The business would fulfill an unmet need in the oil and gas industry, which suffers greatly when rigs go offline because they do

not have the right parts available at the right times. Bullseye's research and development ("R&D") included an online platform, called BETODAY, and a mobile application, called Global Oiler, or "GO." Bullseye used the trademark "GO" in the marketplace starting in 2016.

13. In August 2016, Bullseye hired Timothy as its General Manager to help implement the Bullseye's groundbreaking ideas. As the General Manager of Bullseye, Timothy had access to Bullseye's confidential and trade secret information. While General Manager, Timothy was also trusted with agency authority for Bullseye, and would sign legal documents on its behalf. Before being hired at Bullseye, Timothy had worked for TSC in Beijing, China, beginning in 2013, as an Associate Marketing Specialist and later as a Group Marketing Supervisor. In 2016, Timothy had been transferred to the U.S. where he worked on the initial TSC study of an online platform and mobile application. Timothy had no technical expertise in the oil and gas industry, or otherwise, but had been hired by TSC for his dual Chinese and English language skills.

14. Bullseye took reasonable steps to protect the confidentiality of its trade secret and information. Such steps included, but were not limited to, having its employees (including Timothy) execute non-disclosure agreements and generally having employees share sensitive files via flash drives rather than via email.

15. The Non-Disclosure and Confidentiality Agreement ("NDA") between Bullseye and Timothy required Timothy to maintain the secrecy of Bullseye's confidential information, and to adopt security processes and procedures to safeguard Bullseye's confidential information. Upon termination of the NDA, Timothy was required to ensure that all records containing Bullseye's confidential information be destroyed as directed by Bullseye. The NDA, which was signed November 10, 2016, provides that the duty of non-disclosure survives any termination of the NDA.

16. Sometime after Timothy was hired, Timothy told Bullseye's Procurement Manager, David Jung, that he wanted Jung to complete some specific work projects before Jung left for Christmas vacation. Specifically, Timothy told Jung to complete a confidential database that Jung had been working on. Shortly thereafter, Jung was told by an employee at TSC Manufacturing, which had partnered with Bullseye, that the TSC Manufacturing employee had spoken to Timothy and that Jung would likely be fired by Timothy if Jung did not complete the database in time. Jung worked diligently on the database for weeks, and then turned the final product in to Timothy. Jung also provided Timothy with other confidential and trade secret information that Bullseye had developed and that Timothy had requested that Jung assemble for him.

17. Timothy represented to Bullseye that he was going to spend time with his family in the Northeast over the holidays. Plaintiffs now believe that Timothy took Plaintiffs' trade secret and confidential information "home for the holidays" and met with his father, Lawrence P. Neal. At the time, Lawrence was working at a consulting firm in Boston that provided services to private equity firms. Upon information and belief, Timothy and Lawrence met to plot how to secure financing for the rival company they intended to create with the confidential and trade secret information stolen from Bullseye. When Timothy returned from his vacation on or around January 4, 2017, he immediately provided notice of his resignation. When asked what he would do after leaving Bullseye, Timothy hid his true intentions and misdirected Plaintiffs, telling at least one employee that he might go back to his former career in Wall Street. Timothy's last day with Bullseye was January 13, 2017. On his last day, Timothy returned his company computer to Bullseye; Timothy's company computer had been reformatted and wiped clean of all information.

18. Plaintiffs now understand that Timothy and Lawrence immediately began setting up the rival company, Expedi, with the confidential and trade secret information stolen from Bullseye. The Texas Secretary of State website confirms that Expedi LLC was formed in Texas on January 26, 2017—less than two weeks after Timothy left Bullseye. Since that date, Expedi LLC has been converted to a Delaware Corporation. More recently, Timothy has started to publicly represent that he formed Expedi in January 2017 and has been the Chief Executive Officer of Expedi since that date. His father, Lawrence, now publicly represents that he is the Co-Founder of Expedi.

19. However, at the time of Expedi's founding, Timothy, Lawrence, and Expedi (together, "Defendants") concealed the formation of Expedi and the theft of trade secret and confidential information from Bullseye. As described above, Timothy misdirected Plaintiffs when he lied about his professional plans. As another example, Jonathan Hamilton was employed by TSC Offshore. Hamilton had spent a lot of time with Timothy while Timothy was employed at Bullseye, and the two would frequently go on sales trips without Jung, the Procurement Manager for Bullseye. Hamilton left TSC Offshore in February 2017—only a month after Timothy left Bullseye. Hamilton told TSC Offshore employees that he was leaving to begin a career as a personal physical trainer. His social media posts at the time also represented that he had left TSC Offshore to become a personal physical trainer. Plaintiffs now believe that Hamilton actually immediately began helping Timothy and Lawrence set up Expedi. In fact, his current LinkedIn profile represents that he has been the Chief Operating Officer of Expedi since February 2017. Unfortunately for Plaintiffs, the potential of Defendants' misdeeds remained hidden until the 2018. Not until 2019 did the extent to Defendants' misappropriation, breaches, and conspiracy become apparent.

20. Using the head-start they received from Bullseye's misappropriated confidential and trade secret information, Expedi appears to have launched in mid to late 2017. Now Defendants brazenly claim Bullseye's original ideas and accompanying trade secrets as their own. For example, in a June 2018 article, Timothy claimed that he "discovered how outdated and cumbersome it was for contractors and manufacturers to buy replacement parts" and "teamed up with his father . . . to found Expedi." In reality, upon information and belief, Timothy stole Bullseye's confidential and trade secret information, including for example pre-launch business plans, customer lists, proprietary databases, software source code, and conceptual software plans, to set up a rival company with Bullseye's innovations. As if this weren't enough: Defendants also named their product, "GoExpedi", to be confusingly similar to Bulleye's product trademark "GO".

21. This earlier start harmed Bullseye in at least three important ways. First, leveraging Lawrence's financing connections, Expedi was able to beat Bullseye to market and take Bullseye's intended customers. Second, Defendants have harmed the long-term success and total potential valuation of Bulleye's business model because Expedi has failed to properly implement the technology they misappropriated from Bullseye, harming potential customers' perception of the market that Bullseye sought to create. Upon information and belief, Expedi hastily entered the market while its software platforms still suffered from bugs and reliability failures. Because Expedi was the first into the market, Bullseye's successor-in-interest Rebound has encountered potential customers who are not interested in trying the kind of platform it has to offer, because of problems they experienced with Expedi. Third, Rebound has been forced to expend resources to compete with a competitor that would not have existed in this new market absent Defendants' wrongful acts. If Defendants had created a competing company using lawful means, it would have taken them much longer to get to the competitive point that they are now.

22.     Expedi has also procured substantial private investment on the strength of Bullseye's trade secrets and other intellectual property. Upon information and belief, Expedi has raised over $35 million using information that Timothy stole from Bullseye.

23.     Bullseye was acquired by Rebound in August 2017. Rebound is the successor-in-interest to Bullseye and owns all rights to the trade secrets and confidential information that Defendants originally misappropriated from Bullseye. Rebound's current operations are performed through its operating company, Global Oiler LLC. Like Bullseye's original mobile application, the operating company is also referred to as "GO." Since GoExpedi has launched publicly, Rebound has experienced actual confusion of customers who thought GoExpedi and Global Oiler must be affiliated.

24.     Upon information and belief, Defendants continue to use Rebound's confidential and trade secret information to further Expedi's business. Defendants also continue to use Rebound's trademark "GO" in their public representations to customers as "GoExpedi."

**FIRST CAUSE OF ACTION**
**(Trade Secret Misappropriation**
**TEX. CIV. PRAC. & REM. CODE § 134A)**
**(Against Timothy and Expedi)**

25.     The material facts alleged above are incorporated here by reference.

26.     Plaintiff is the owner of valuable confidential information, including but not limited to its unique business plans, confidential information related to its mobile application and online platform, software source code, and proprietary databases. This information constitutes trade secrets because it derives independent economic value, both actual and potential, from not being known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

27. Defendant Timothy improperly took Plaintiff's trade secrets with him and used it to start the defendant company Expedi, Inc without Plaintiff's consent. Defendants continue to misappropriate those trade secrets for their commercial gain without any legal right to do so.

28. As a direct and proximate result of their conduct, Plaintiff suffered injuries, which includes continued irreparable harm.

29. Rebound seeks equitable relief in the form of an order directing Expedi and Timothy to disgorge all profits gained as a result of their misappropriation of Rebound's trade secrets. Plaintiff is also entitled to injunctive relief to enjoin Defendants' use of Plaintiff's trade secrets under TEX. CIV. PRAC. & REM. CODE § 134A.003.

30. Plaintiff has been damaged and will continue to be damaged by Defendants' actions as described above in an amount to be proven at trial. Rebound seeks all actual damages to which it is entitled for Expedi's and Timothy's misappropriation.

**SECOND CAUSE OF ACTION**
**(Breach of Contract)**
**(Against Timothy)**

31. The material facts alleged above are incorporated here by reference.

32. The NDA is a valid, enforceable contract binding on Timothy. As a party and successor-in-interest of a party, Plaintiffs are entitled to sue for breach. They have met all conditions precedent to and otherwise complied with the NDA.

33. Timothy breached the NDA by using and disclosing Bullseye's confidential information in violation of the NDA, and failing to destroy Bullseye's confidential information in his possession as required.

34. As a result of Timothy's breaches of the NDA, Plaintiffs have suffered and will continue to suffer financial loss. Plaintiffs seek actual damages for this loss and injunctive relief to enjoin Defendants' use of Plaintiffs' confidential information.

### THIRD CAUSE OF ACTION
### (Common Law Trademark Infringement)
### (Against Expedi)

35. The material facts alleged above are incorporated here by reference.

36. Rebound's mark "GO" is eligible for protection as a trademark under Texas law.

37. Rebound is the senior user of the mark, because it was assigned Bullseye's rights to the mark. Bullseye and/or Rebound have continuously used the mark since 2016, before Expedi was created.

38. The marks "GO", affiliated with a platform to acquire MRO materials and services, and "GoExpedi", affiliated with the same kind of business, are likely to confuse customers, and have actually confused customers.

39. This likelihood of confusion will cause irreparable injury to Plaintiffs for which there is no adequate legal remedy because of (1) Expedi's inferior product and dilution of Rebound's mark, and (2) the likelihood that customers will mistakenly do business with Expedi instead of Rebound.

40. Plaintiffs seek equitable relief enjoining Expedi from using the confusingly similar mark "GoExpedi" and actual damages from financial loss suffered as a result of Expedi's use of this mark.

### FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)
### (Against Timothy)

41. The material facts alleged above are incorporated here by reference.

42. Timothy owed Bullseye a fiduciary duty because he was employed by Bullseye, was the General Manger of Bullseye, was endowed with agency authority for Bullseye.

43. Upon information and belief, Timothy breached his fiduciary duty to Bullseye by stealing its confidential and trade secret information.

44. Timothy's breach of his fiduciary duty proximately caused injury to Bullseye and its successor-in-interest, Rebound, and resulted in a benefit to Timothy because he used Bullseye's information to start a competing company.

45. Plaintiffs seek actual damages that resulted from Timothy's breach of fiduciary duty. Plaintiffs also seek equitable relief in the form of an order directing Timothy to disgorge all profits gained as a result of his breach of fiduciary duty.

### FIFTH CAUSE OF ACTION
### (Knowing Participation in Breach of Fiduciary Duty)
### (Against Lawrence)

46. The material facts alleged above are incorporated here by reference.

47. Timothy breached his fiduciary duty to Bullseye as alleged above.

48. Lawrence knew that Timothy was employed by and was the General Manager of Bullseye.

49. Upon information and belief, Lawrence knowingly participated in Timothy's breach of fiduciary duty by assisting Timothy to plan for and receive financial investment for the company he would create with Bullseye's stolen information (Expedi).

50. These actions proximately caused injury to Bullseye and its successor-in-interest, Rebound, and resulted in a benefit to Timothy and Lawrence because they used Bullseye's information to start a competing company. Plaintiffs therefore seek, jointly and severally, all relief against Lawrence that they seek against Timothy for his breach of fiduciary duty.

### SIXTH CAUSE OF ACTION
### (Civil Conspiracy)
### (Against Timothy and Lawrence)

51. The material facts alleged above are incorporated here by reference.

52. Lawrence and Timothy agreed to create a company using Bullseye's trade secrets and confidential information.

53. In furtherance of this objective, Timothy committed several independently actionable torts. Namely, Timothy (1) misappropriated Bullseye's trade secrets, (2) stole Bullseye's confidential information in violation of his NDA, and (3) breached his fiduciary duty to Bullseye as described above.

54. Plaintiffs suffered injury as a proximate result of these acts and seek actual damages jointly and severally against Defendants Timothy and Lawrence.

### SEVENTH CAUSE OF ACTION
### (Unfair Competition by Misappropriation)
### (Against all Defendants)

55. The material facts alleged above are incorporated here by reference.

56. Bullseye created its trade secrets and confidential information through extensive time, labor, skill and money.

57. Defendants' used Bullseye's confidential information and trade secrets in competition with Bullseye and its successor-in-interest Rebound, thereby gaining a special advantage in that competition because they were burdened with little or none of the expense incurred by Plaintiffs.

58. This unfair competition has caused commercial damages to Plaintiffs. Plaintiffs seek actual damages for financial losses caused by this unfair competition.

**APPLICATION FOR PERMANENT INJUNCTION**

59. The material facts alleged above are incorporated here by reference.

60. As alleged above, Defendants have committed multiple wrongful acts, including: misappropriation of Plaintiff's trade secrets, theft of Plaintiff's confidential information, and trademark infringement. Plaintiff is entitled to injunctive relief to enjoin Defendants' use of Plaintiff's trade secrets under TEX. CIV. PRAC. & REM. CODE § 134A.003. Plaintiff is also entitled to injunctive relief to enjoin Defendants' use of Plaintiffs' confidential information and Defendants' confusingly similar mark "GoExpedi."

61. By reason of Defendants' misconduct as alleged herein, Plaintiffs did and will continue to suffer irreparable injury. Because Defendants are harming Plaintiffs' reputations, goodwill, and business opportunities by using the confusingly similar mark "GoExpedi" and by using Rebound's trade secret and confidential information in its business, there is no adequate remedy at law.

62. Plaintiffs ask the Court to set its Application for Permanent Injunction for a full trial on the merits and, after the trial, issue a permanent injunction against Defendant by which they are enjoined from:

   a. Using or disclosing Rebound's trade secret information;

   b. Using or disclosing Rebound's confidential information;

   c. Using or disclosing any information obtained from Defendants regarding Plaintiffs' business or technology; and

   d. Selling or offering to sell products or services under the mark "GoExpedi."

## TOLLING OF LIMITATIONS

63. If applicable, the statute of limitations of the causes of action asserted above were tolled by the discovery rule and Defendants' fraudulent concealment of their bad acts.

## DISGORGEMENT

64. Plaintiffs are entitled to have all of Defendants' profits that resulted from Timothy's breach of fiduciary duty disgorged. Plaintiff is also entitled to have all of Defendants' profits that resulted from Defendants' trade secret misappropriation disgorged.

## EXEMPLARY DAMAGES

65. Because Defendants' conduct is willful and malicious, Plaintiff seeks exemplary damages under TEX. CIV. PRAC. & REM. CODE § 134A.004(b). Plaintiffs also seek exemplary damages because Timothy's breach of fiduciary duty was malicious, or at the very least, committed with gross negligence.

## ATTORNEY FEES

66. Plaintiff is entitled to reasonable attorney fees under TEX. CIV. PRAC. & REM. CODE § 134A.005 because Defendants willfully and maliciously misappropriated Plaintiff's trade secrets. Plaintiff is also entitled to reasonable attorney fees under TEX. CIV. PRAC. & REM. CODE § 38.001 against Timothy because he breached his NDA with Bullseye.

## CONDITIONS PRECEDENT

67. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred.

## REQUEST FOR DISCLOSURE TO DEFENDANTS

68. Pursuant to TEX. R. CIV. P. 194, Defendants are requested separately to disclose to counsel for Plaintiffs at the offices of counsel for Plaintiffs, within fifty days of service of this request, the information and/or materials described in TEX. R. CIV. P. 194.2(a) through (l).

## JURY DEMAND

69. Plaintiff demands that its claims be tried to a jury.

## PRAYER FOR RELIEF

70. For these reasons, Plaintiff respectfully requests judgment against Defendants Expedi, Inc., Timothy John Neal, and Lawrence P. Neal after trial or final hearing, as follows:

  a. That Defendants pay Plaintiff's actual and exemplary damages, plus court costs and reasonable attorney fees incurred in prosecuting this action;

  b. That Defendants pay pre-judgment and post-judgment interest at the legal rate;

  c. That Plaintiff receive injunctive relief as requested herein; and

  d. That Plaintiff be awarded all other relief to which it is entitled.

Dated: February 11, 2020

Respectfully submitted,

*/s/ Jeffrey A. Andrews*
Jeffrey A. Andrews
State Bar No. 24050227
Emma W. Perry
State Bar No. 24102351
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
jandrews@yettercoleman.com
eperry@yettercoleman.com

ATTORNEYS FOR PLAINTIFF
REBOUND INTERNATIONAL, LLC